**FILED**

MAY 27 2016

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

DANIEL STEVE DIXON, CDCR # C-34223 )
Sierra Conservation Center, C-4-129-L )
5150 O'Byrnes Ferry Road )
Jamestown, CA. 95327, )
)
                    Plaintiff, )
)
        - vs - )
)
JAMES B. COMEY  Director )
Federal Bureau of Investigation )
935 Pennsylvania Avenue, N.W. )
Washington, D.C. 20535, )
)
LORETTA LYNCH, U.S. Attorney General )
United States Justice Department )
950 Pennsylvania Avenue, N.W. )
Washington, D.C. 20535, )
)
Sued in their official capacities, )
)
                    Defendants. )
_____ )

Case: 1:16-cv-01010
Assigned To : Chutkan, Tanya S.
Assign. Date : 5/27/2016
Description: FOIA/Privacy Act

**RECEIVED**

MAY 17 2016

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

**COMPLAINT**

**I.**

**Introduction**

1. Plaintiff, DANIEL STEVE DIXON, a California state prisoner, acting in his own behalf, in pro per, submits this civil rights action for relief pursuant to the Freedom of Information Act ("FOIA") under 5 U.S.C. § 522, where the Federal Bureau of Investigation ("FBI") has created non-exempted written [exculpatory] documents that plaintiff seeks, which is essential to his criminal conviction.

2. Plaintiff has exhausted administrative remedies with the United States Department of Justice ("DOJ") Office of Information Policy ("OIP")

- 1 -

VERIFICATION/PROOF OF SERVICE, last page

1  when that agency received his February 11, 2016 administrative appeal,
2  Request No. 1343107, on March 2, 2016 and assigned number **DOJ-AP-2016-000405**
3  but failed to comply with the applicable time provisions to provide the
4  documents plaintiff requested pursuant to 5 U.S.C. §§ 552(a)(6)(C) and
5  552(a)(6)(A)(i).  (See, Exhibits A & B.)

6  ## II.

7  ### Jurisdiction

8  3.  The Court has jurisdiction over plaintiff's claim pursuant to the
9  United States Constitution and 5 U.S.C. § 552(a)(4)(B) (2006 & Supp. IV).
10 Further, the Court has jurisdiction over these matters pursuant to 28 U.S.C.
11 § 1331.

12 ## III.

13 ### Facts

14 4.  On August 4, 2015, plaintiff received a July 31, 2015 letter from
15 San Joaquin County Assistant District Attorney Ronald J. Freitas stating that
16 their office "received a [response] letter dated July 14, 2015 from the
17 Federal Bureau of Investigation (F.B.I.) regarding expert testimony in
18 [plaintiff's] criminal trial" on compositional bullet lead analysis (CBLA).
19 The July 14, 2016 letter by Christopher "Todd" Doss, Director of FBI
20 Laboratory in Washington, D.C., stated that the transcript of testimony on
21 CBLA provided by plaintiff's sister, Sandra Dixon, which their office
22 received on defense expert witness Dr. Vincent Guinn and the prosecution
23 expert witness FBI Examiner John Kilty, only FBI Examiner John Kilty's
24 trial transcript testimony was reviewed.  (See, Exhibits C & B.)

25 5.  FBI Agent Doss additionally stated in his July 14, 2015 addressed
26 to San Joaquin County District Attorney Tori Verber Salazar that "the FBI is
27 cooperatwing with the Innocence Project" so that the Innocence Project may

28

- 2 -

1  determine "whether improper CABL [sic] testimony was material to the convict-
2  ion of any defendant" although FBI Agent Doss had earlier stated in the same
3  letter that "[a]fter reviewing the testimony of the FBI's examiner, it is the
4  opinion of the FBI Laboratory that the examiner properly testified" at
5  plaintiff trial.   Further, FBI Agent Doss wrote that their agency has CBLA
6  files in their office.  (Exhibit C.)

7       6.  On August 6, 2015, plaintiff responded to both letters by Assistant
8  District Attorney Ronald J. Freitas snd Director of FBI Laboratory,
9  Christopher Todd Doss, in dissatisfaction with Agent Doss's July 31, 2015
10 letter and Mr. Freitas July 31, 2015 letter stating his decision to contact
11 plaintiff's trial attorney whom on record plaintiff attempted to remove from
12 his case during his second jury trial.   A copy of same letter was sent to
13 Marc LeBeau at the FBI Laboratory Division address provided by FBI Agent
14 Doss.  (Exhibit E.)  No reply received.

15      7.  On December 29, 2015, plaintiff again wrote to the FBI Laboratory
16 Division,  Quantico, Virginia regarding comparative or compositional bullet-
17 lead analysis (CBLA), Criminal Case No. 57383, but without addressing any
18 particular agent, pursuant to the FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C.
19 § 552, under penalty of perjury.  Plaintiff attached three separate documents
20 on comparative bullet-lead analysis reports which mentioned "discredited and
21 abandoned forensic technique which used chemistry to link crime scene
22 bullet   to ones possessed by suspects on the theory that each batch of lead
23 had a unique elemental makeup", "FBI laboratory announces discontinuation of
24 bullet lead examinations", "discredited bullet evidence: 5 years in, FBI
25 still hasn't finished review of 2,500 cases", including describing cases
26 where murder convictions were reversed  based on discredited bullet evidence,
27 (CBLA) and attachment 4 on "physical evidence examination report" where "no
28

- 3 -

## INDEX OF EXHIBITS FOR FOIA COMPLAINT

| Exhibit | Description of Document | Page(s) |
|---------|------------------------|---------|
| A | FREEDOM OF INFORMATION APPEAL, 2/11/16, w/Attachments: | 1-17 |
| A2 | Notification; David M. Hardy, FBI Section Chief, Records/ Information, 2/5/16 | 1 |
| A3 | Letter re: COMPARATIVE OR COMPOSITIONAL BULLET-LEAD ANALYSIS (CBLA), CRIMINAL CASE NO. 57383, by Daniel Dixon, 12/29/15 | 2 |
| A4 | Attachment 1; Comparative bullet-lead analysis From Wikipedia, the free encyclopedia, internet | 2 |
| A5 | Attachment 2; FBI Laboratory Announces Discontinuation of Bullet Lead Examination, off internet 7/30/14 | 1 |
| A6 | Attachment 3; Cleveland.com, Discredited bullet evidence; 5 years in, FBI still hasn't finished review of 2,500 cases, internet 2015 | 3 |
| A7 | District Attorney, Sacramento County Crime Laboratory; re: PHYSICAL EVIDENCE EXAMINATION REPORT, 9/1/80 | 1 |
| B | U.S. Department of Justice Office of Information Policy re: receipt of administrative appeal, by Priscilla Jones, Supervisory Administrative Specialist, 3/14/16 | 1 |
| C | U.S. Department of Justice, Federal Bureau of Investigation, Washington, D.C., letter by Christopher "Todd" Doss, Director FBI Laboratory, 7/14/15 | 2 |
| D | San Joaquin County Assistant District Ronald J. Freitas letter re: FBI letter and transcript of FBI Expert Testimony, 7/31/15 | 1 |
| E | Letter re: DISCREDITED AND ABANDONED COMPARATIVE BULLET ANALYSIS, by Daniel Dixon, 8/6/15 | 2 |

**FREEDOM OF INFORMATION APPEAL**

February 11, 2016

Mr. Daniel Dixon, C-34223
Sierra Conservation Center, C-4-129-L
5150 O'Byrnes Ferry Road
Jamestown, CA. 95327

Director, Office of Information Policy (OIP)
U.S. Department of Justice
1425 New York Ave., NW, Suite 11050
Washington, D.C. 20530-0001

**RE: FOIPA Request No. 1343107-000 (APPEAL)**

Dear Director:

This is an appeal under the FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. § 552.

On December 29, 2015, I made a FOIA request for:

1) Comparative Bullet-Lead Analysis (CBLA) report, also known as Compositional Bullet-Lead Analysis by Rochelle F.H. Bohaty, March 2, 2005;

2) The FBI September 1, 2005 memorandum and/or letter regarding Discontinuation of Bullet Lead Examination;

3) Information, e.g., letter or memorandums, from the prosecution's office [prisoners or ex-prisoners (names redacted, if necessary) who "used the bullet evidence at trial" to gain conviction, specifically those charged with cases where CBLA was used, that lead to reversl of criminal convictions;

4) FBI letter to the state, city and county agencies, including district attorney officies declaring the FBI abandonment of CBLA impacted approximately 2,000 criminal cases nationally; and

5) Any further information, possibly exculpatory (see attachment 4) to my case, including information from the San Joaquin District Attorney's Office, if applicable, related to CBLA matters. (Attachments 1-5, submitted with the December 29, 2015 request under the FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. § 552; also serve as supporting documents to the above five areas of information sought.

On February 5, 2016, your agency denied my request allegedly based on inadequate description of information requested although the attachments 1-5 provide detailed information. (See attached FBI response.)

"The Freedom of Information Act (FOIA), § 552, was conceived in an effort to permit access by the citizenry to most forms of government records. In essence, FOIA provides that all documents are available to the public unless specifically exempted by the FOIA itself. The court has repeatedly stated that these exemptions from disclosure must be construed narrowly, in

**RE: FOIPA Request No. 1343107-0000, Continued**
Page 2, February 11, 2016:

disclosure must be construed narrpwly, in such a way as to provide the maximum access consonant with the overall purpose of the FOIA, when the government declines to disclose a document the burden is upon the agency to prove de noova in trial court that the information sought fits under one of the exemptions to the FOIA. Thus the FOIA and the judicial interpretations recognize and place great emphasis upon the importance of disclosure." <u>Vaughn v. Rosen</u>, 484 F.2d 820 (D.C. Cir.1973). See also, <u>5 U.S.C. § 552(b)(6)</u>.

Please be informed that I consider the requested material clearly reasonable under FOIA and consider your agency's policy (or denial) to be arbitrary and capricious.

I humbly expect that upon your reconsideration, you will reverse the decision denying my request. However, if this appeal is denied, I intend to file a lawsuit to compel disclosure.

Respectfully submitted:

Daniel Dixon

Daniel Dixon,
In Propria Persona

Enclosures
Verification/Proof of Service
cc:

# Comparative bullet-lead analysis

From Wikipedia, the free encyclopedia

**Comparative bullet-lead analysis** (CBLA) also known as **Compositional bullet-lead analysis**) is a now discredited and abandoned[1] forensic technique which used chemistry to link crime scene bullets to ones possessed by suspects on the theory that each batch of lead had a unique elemental makeup.[2]

The technique was first used after U.S. President John F. Kennedy's assassination in 1963.[2] From the early 1980s through 2004 the US Federal Bureau of Investigation conducted about 2,500 analyses on cases submitted by law-enforcement groups. The results of these analyses had often been questioned by defence lawyers and the press, so the FBI finally asked the United States National Academy of Science's Board on Science, Technology, and Economic Policy to research the scientific merit of the process.

In 2004 the Board's study was summarized in "Forensic Analysis: Weighing Bullet Lead Evidence." The Board determined that the chemical analyses were being performed correctly and were probably sufficient to determine correlation between two bullets from separate sources (the analysis used plasma-optical emission spectroscopy to identify trace elements in the bullets). The report also concluded that the seven trace elements selected for the analyses (arsenic, antimony, tin, copper, bismuth, silver and cadmium) are acceptable for sample correlation. The report finally concluded that the procedure is the best available method for such correlations. The greatest caveat in the report was that the statistical tests as applied by the FBI could cause confusion and misinterpretation when transmitted to prosecutors or when explained to a trial jury. Because of the significance of this weakness, the report concluded that the analysis should be used with caution. This report helped the FBI decide in 2004 to voluntarily cease offering the analysis to law-enforcement entities. The National Academy of Sciences never required that the FBI stop using the test.[2]

*CNN PRESENTS Encore Presentation: Reasonable Doubt* examined the unreliability of this technique.[3] It has been discontinued as of September 1, 2005.[4]

The U.S. government has fought releasing the list of the estimated 2,500 cases over three decades in which it performed the analysis, which may have led to false convictions. According to the FBI, only 20% of the 2,500 tests performed introduced the CBLA results into evidence at trial.[4]

In 17 December 2008, Jimmy Ates was released from a Florida prison after serving ten years on the conviction of having murdered his wife, a conviction obtained largely on the strength of a bullet-lead analysis. His conviction was overturned as a consequence of the 2004 report.[1]

# Further reading

- Randich, Erik; Duerfeldt, Wayne; McLendon, Wade; Tobin, William (2002). "A metallurgical review of the interpretation of bullet lead compositional analysis". *Forensic Science International* **127** (3): 174–91. doi:10.1016/S0379-0738(02)00118-4 (http://dx.doi.org/10.1016%2FS0379-0738%2802%2900118-4). PMID 12175947 (https://www.ncbi.nlm.nih.gov/pubmed/12175947).
- "Discredited bullet evidence: 5 years in, FBI still hasn't finished review of 2,500 cases"

(http://www.cleveland.com/nation/index.ssf/2010/01/discredited_bullet_evidence_5.html).
www.cleveland.com. Dec 29, 2009.

# References

1. ^ *a b* Bohaty, Rochelle F. H. (March 2, 2009). "Board's Report Leads to Overturn of Murder Conviction" (https://pubs.acs.org/cen/government/87/8709gov1a.html). *Chemical & Engineering News* (American Chemical Society): 32. Retrieved May 31, 2013.
2. ^ *a b c* Solomon, John (October 18, 2007). "FBI's Forensic Test Full of Holes: Lee Wayne Hunt is one of hundreds of defendants whose convictions are in question now that FBI forensic evidence has been discredited" (http://www.washingtonpost.com/wp-dyn/content/article/2007/11/17/AR2007111701681.html). Washington Post.
3. ^ "CNN PRESENTS-Encore Presentation: *Reasonable Doubt*" (http://transcripts.cnn.com/TRANSCRIPTS/0605/07/cp.01.html) (transcript). CNN. Aired May 7, 2006. Retrieved May 31, 2013. Check date values in: |date= (help)
4. ^ *a b* "FBI Laboratory Announces Discontinuation of Bullet Lead Examinations" (http://www.fbi.gov/news/pressrel/press-releases/fbi-laboratory-announces-discontinuation-of-bullet-lead-examinations) (Press release). FBI National Press Office. September 1, 2005.

Retrieved from "http://en.wikipedia.org/w/index.php?title=Comparative_bullet-lead_analysis&oldid=604113906"

Categories: Overturned convictions

---

- This page was last modified on 14 April 2014, at 05:28.
- Text is available under the Creative Commons Attribution-ShareAlike License; additional terms may apply. By using this site, you agree to the Terms of Use and Privacy Policy. Wikipedia® is a registered trademark of the Wikimedia Foundation, Inc., a non-profit organization.

ATTACHMENT 2

*10*   7/30/2014



## National Press Releases

### FBI Laboratory Announces Discontinuation of Bullet Lead Examinations

| | |
|---|---|
| **Washington, D.C.** | **FBI National Press Office** |
| September 01, 2005 | (202) 324-3691 |

Washington, D.C. — The FBI Laboratory today announced that, after extensive study and consideration, it will no longer conduct the examination of bullet lead. Bullet lead examinations have historically been performed in limited circumstances, typically when a firearm has not been recovered or when a fired bullet is too mutilated for comparison of physical markings. Bullet lead examinations use analytical chemistry to determine the amounts of trace elements (such as copper, arsenic, antimony, tin, etc.) found within bullets. The result of that analysis allows crime-scene bullets to be compared to bullets associated with a suspect. Since the early 1980's the FBI Laboratory has conducted bullet lead examinations in approximately 2,500 cases submitted by federal, state, local, and foreign law enforcement agencies. In less than 20% of those cases was the result introduced into evidence at trial.

In 2002, the FBI asked the National Research Council (NRC) of the National Academy of Science to have an independent committee of experts evaluate the scientific basis of comparative bullet lead analysis. Specifically, the FBI divided the bullet lead examination into three parts (the scientific method, the data analysis, and the interpretation of the results) and asked the NRC for an impartial review of each area. The technology reviewed by the NRC had been used by the FBI Laboratory since 1996. The NRC's recommendations, following the study, were set forth in a report entitled "Forensic Analysis: Weighing Bullet Lead Evidence."

The NRC found that the FBI Laboratory's analytical instrumentation is appropriate and the best available technology with respect to precision and accuracy for the elements analyzed. It also found that the elements selected by the FBI for this analysis are appropriate. The NRC expressed concerns, however, relating to the interpretation of the results of bullet lead examinations.

Following the issuance of the report the FBI Laboratory embarked on an exhaustive 14-month review to study the recommendations, offered by the NRC, including an evaluation of statistical methodologies. Although the NRC stated that the FBI Laboratory did not need to suspend bullet lead examinations while undertaking this review, the FBI elected to do so while the review was pending.

One factor significantly influenced the Laboratory's decision to no longer conduct the examination of bullet lead: neither scientists nor bullet manufacturers are able to definitively attest to the significance of an association made between bullets in the course of a bullet lead examination. While the FBI Laboratory still firmly supports the scientific foundation of bullet lead analysis, given the costs of maintaining the equipment, the resources necessary to do the examination, and its relative probative value, the FBI Laboratory has decided that it will no longer conduct this exam.

Letters outlining the FBI Laboratory's decision to discontinue these examinations are being sent to approximately 300 agencies that received laboratory reports indicating positive results since 1996. The letters are being sent so that these agencies may take whatever steps they deem appropriate, if any, given the facts of their particular case. It is important to note that the FBI Laboratory has not determined that previously issued bullet lead reports were in error.

The NRC's report is available through the National Academies Press website at (www.nap.edu).

### Recent National Press Releases

07.28.14   **Harold H. Shaw Named Special Agent in Charge of the Intelligence Division at the New York Field Office**

07.14.14   **William P. Woods Named Special Agent in Charge of St. Louis Division**

07.14.14   **Perrye K. Turner Named Special Agent in Charge of Houston Division**

07.14.14   **Sean M. Cox Named Special Agent in Charge of Springfield Division**

07.14.14   **Howard S. Marshall Named Special Agent in Charge of Louisville Division**

07.11.14   **Department of Justice Provides Update on GameOver Zeus and Cryptolocker Disruption**

07.08.14   **W. Jay Abbott Named Special Agent in Charge of Indianapolis Division**

06.30.14   **BNP Paribas Agrees to Plead Guilty and to Pay $8.9 Billion for Illegally Processing Financial Transactions for Countries Subject to U.S. Economic Sanctions**

06.23.14   **168 Juveniles Recovered in Nationwide Operation Targeting Commercial Child Sex Trafficking**

06.16.14   **Richard T. Thornton Named Special Agent in Charge of Minneapolis Division**

**More National Press Releases**

Accessibility | eRulemaking | Freedom of Information Act | Legal Notices | Legal Policies and Disclaimers | Links | Privacy Policy | USA.gov | White House
FBI.gov is an official site of the U.S. government, U.S. Department of Justice

Close

ATTACHMENT 3

© cleveland.com

# Discredited bullet evidence: 5 years in, FBI still hasn't finished review of 2,500 cases

**Associated Press** By **Associated Press**

on January 18, 2010 at 6:51 PM, updated January 18, 2010 at 9:19 PM



Associated Press, FileThis Dec. 29, 2009, photo shows Philip Scott Cannon outside of his home in Salem, Ore. The Salem man recently won his freedom after spending more than 10 years behind bars for the fatal shootings of three people. Now discredited bullet analysis evidence was used to connect him to the crime. Cannon, who always maintained he was wrongly convicted, was freed after prosecutors said key evidence needed for a retrial was unavailable.P. SOLOMON BANDA

DENVER, Colorado -- Three people convicted of murder have been released from prison because their cases were tainted by a now discredited theory that bullets found at a crime scene could be linked to bullets found in possession of suspects.

Nearly five years after the FBI abandoned its so-called comparative bullet lead analysis, the FBI has yet to complete its review of nearly 2,500 cases where law enforcement used such evidence to investigate a case.

So far, the agency has found 187 cases where so-called comparative bullet lead analysis evidence was not only used in the investigation, but came into play at trial where FBI experts provided testimony. It has notified prosecutors in those cases where testimony from its experts "exceeds the limits of the science and cannot be supported by the FBI," one agency letter says.

At least three convictions — that of a Colorado man who served 12 years in prison for a double slaying, a Florida man who served 10 years after being convicted of killing his wife, and an Oregon man convicted of a triple slaying — have recently been overturned.

All three men are now free.

More about crime

More about the FBI

More about science

More court news

More national news:
Cleveland.com/nation

Comparative bullet lead analysis was based on the theory that lead bullets pick up trace elements such as copper, antimony, arsenic, bismuth and silver during manufacturing. When the soft metal is shaped into bullets and packaged, bullets in the same box would contain similar amounts of the trace elements, the theory went.

FBI lab technicians compared bullet fragments from a crime scene with bullets possessed by suspects. If the trace elements closely matched, prosecutors — backed by FBI testimony — would argue the suspects' guilt.

Defense attorneys say the analysis appeared to be a miracle of science: It required a small nuclear reactor, once housed at an FBI lab at the Hoover Building in Washington, D.C., and relied on the expertise of only a handful of qualified FBI agents.

FBI experts wowed jurors by explaining how gamma rays, energy released from bombarding a bullet with neutrons, could be measured to make a match.

"Sure, you have this whiz-bang, whipper-dipper machine that looks at all the elements of the universe, but it doesn't mean anything," said attorney Dave Wymore, a former director of the Colorado public defenders office who fought successfully to exclude such evidence in a triple-murder case and won an acquittal in 1999.

The FBI began the tests in the mid-1960s. It quit in 2005, after the National Research Council of the National Academy of Science concluded that while its methods of measuring trace elements were sound, its conclusions were flawed. Millions of other bullets could contain trace elements in identical quantities, the council said. That rendered the FBI's box-by-box conclusions meaningless.

FBI lab spokeswoman Ann Todd said the agency has reviewed about 2,000 cases and is waiting on information from prosecutors who may have used the bullet evidence at trial in the remaining 500 cases. In cases where an FBI expert testified, the agency is reviewing trial transcripts.

Cases in which a defendant pleaded guilty aren't being reviewed.

In Colorado, attorneys for Tim Kennedy, convicted in 1997 for the double slaying in Colorado Springs, received an FBI letter in May 2008. The judge cited the discredited evidence, among other factors, in reversing Kennedy's conviction in April last year. He was freed in May.

Kennedy's attorneys, John Dicke and Kathleen Carlson, said testimony by FBI bullet expert Ernest Roger Peele had added an air of credibility to what they called a weak case. Peele, who conducted such tests for at least 15 years and testified in more than 150 cases, declined to comment when reached by The Associated Press.

Kennedy remains free on bail, while prosecutors appeal the reversal of his conviction.

**In Florida, Jimmy Ates was released from prison in December 2008 after serving 10 years for the 1991 murder of his wife. While other evidence helped win his release, the use of comparative bullet lead analysis "was really the lynchpin to get that case back into court," said Seth Miller of the Innocence Project of Florida, a group that provides legal assistance for prisoners who believe they can be exonerated by new evidence, usually DNA testing.**

A letter from the FBI was the determining factor in allowing Ates to reopen his case after he had exhausted his appeals. He is to be retried next year.

The FBI has agreed to notify attorneys with the Innocence Project, along with prosecutors, of any suspect cases. Attorneys at the Chicago law firm of Winston & Strawn are helping ensure the defendants learn of the discredited evidence.

"Somebody needs to be there to review those cases," said Miller, whose organization has received 24 letters from the FBI. "The reality is if you're an indigent person in prison, you may not even get that letter if it goes to the prosecutor."

His group isn't taking action in 12 cases where it determined prosecutors have overwhelming evidence of guilt.

Philip Scott Cannon of Oregon was freed most recently, on Dec. 18, after serving more than 10 years in prison for the 1998 fatal shootings of three people. Prosecutors hold out little hope that Cannon would be retried because exhibits from the trial could not be found.

© 2015 cleveland.com. All rights reserved.

ATTACHMENT 4

16



# DISTRICT ATTORNEY
## SACRAMENTO COUNTY
### CRIME LABORATORY
4400 V Street • Sacramento, California 95817
(916) 440-5433

**HERB JACKSON**
District Attorney

September 1, 1980

**ALLAN E. GILMORE**
Laboratory Director

**L. ANTHONY WHITE**
Chief Deputy

Judge Rothwell Mason
Superior Court
Department 1

LAB NO:    A80-1335
SUBJECT:   DIXON, DANIEL STEVE
OFFENSE:   187 PC
AGENCY NO: 57383

PHYSICAL EVIDENCE EXAMINATION REPORT

On August 29, 1980, at 1402 hours, the undersigned received the following exhibits from Officer D. Brenner of the Sacramento Sheriff's Department:

   Item #1.  One plastic container enclosing a lead fragment
             with lubaloy coating.

   Item #2.  One manila envelope enclosing one plastic container
             containing pieces of tissue, bone and fingernail.

RESULTS AND CONCLUSIONS

Microscopic examination of the pieces of tissue, Item #2, revealed the presence of one fragment of lead and two fragments of a green transparent non-metallic material which appeared to be glass.

No lubaloy coating was detected on the lead fragment found to be present in the tissue, Item #2. Particles of lubaloy coating were detected on the lead fragment, Item #1.

DISPOSITION OF EVIDENCE

Items #1 and 2 will be taken to Superior Court, Department 1, on September 2, 1980, by the undersigned.

*Don Stottlemyer*
DON STOTTLEMYER
CRIMINALIST

DS:kc

SEP 16 1980

4

## VERIFICATION

### (C.C.P. §§ 446; 2015.5; 28 U.S.C. § 1746)

I, __DANIEL STEVE DIXON__ , declare under penalty of perjury that:

I am the __Appellant__ in the above-named matter.  I have read the below named document and know the contents thereof, information and belief therein that they are true.

### FOIPA Request No. 1343107-000 (APPEAL)

**EXECUTED** this 11th, day of __February__ , __2016__ , at Sierra Conservation Center, County of Tuolumne, Jamestown, California 95327.

[Signature]: _Daniel Dixon_
D E C L A R A N T

* * * * * * * *

## PROOF OF SERVICE BY MAIL

### (C.C.P. §§ 1013(a); 2015.5; 28 U.S.C. § 1746)

I, __DANIEL STEVE DIXON__, hereby declare:

I served a copy of the following document on each of the person(s) and/or party(ies) as listed below by placing a true copy in the United States Mail at: __Jamestown__, California, on __February__ , __11th__ , __2016__ .

### FOIPA Request No. 1343107-000 (APPEAL)

Person(s) and/or party(ies) served/or mailed to:

Director, Office of Information Policy (OIP)   David M. Hardy, Section Chief
U..S. Department of Justice                    U.S. Department of Justice
1425 New York Ave., Suite 11050                Federal Bureau of Investigation
Washington, D.C. 20530-0001                    170 Marcel Drive
                                               Winchester, VA. 22602-4843

I swear under penalty of perjury that the foregoing is true and correct. **EXECUTED** at __Jamestown__, California 95327, on this __11th__ day of __February__ , __2016__

[Signature]: _Daniel Dixon_
D E C L A R A N T

p8



**U.S. Department of Justice**

Office of Information Policy

---

*Telephone: (202) 514-3642*

*Washington, D.C.  20530*

March 14, 2016

Mr. Daniel Dixon
No. C-34223
Sierra Conservation Center, C-4-129-L
5150 O'Byrnes Ferry Road
Jamestown, CA  95327

      Re:  Request No. 1343107

Dear Mr. Dixon:

      This is to advise you that your administrative appeal from the action of the Federal Bureau of Investigation was received by this Office on March 2, 2016.

      The Office of Information Policy has the responsibility of adjudicating such appeals.  In an attempt to afford each appellant equal and impartial treatment, we have adopted a general practice of assigning appeals in the approximate order of receipt.  Your appeal has been assigned number **DOJ-AP-2016-000405**.  Please mention this number in any future correspondence to this Office regarding this matter.  Please note that if you provide an e-mail address or another electronic means of communication with your request or appeal, this Office may respond to your appeal electronically even if you submitted your appeal to this Office via regular U.S. Mail.

      We will notify you of the decision on your appeal as soon as we can.  If you have any questions about the status of your appeal, you may contact me at the number above.  If you have submitted your appeal through FOIAonline, you may also obtain an update on the status of your appeal by logging into your account.

      Sincerely,

Priscilla Jones
Supervisory Administrative Specialist

Mq



U.S. Department of Justice

Federal Bureau of Investigation

Washington, DC 20535-0001

July 14, 2015

Tori Verber Salazar
San Joaquin County District Attorney
222 E Weber Avenue #202
Stockton, CA 95202

      Re:     Case Name: Daniel Steve Dixon (No. 57383)
               FBI File Number: HQ 63-0

Dear Ms. Salazar:

      Since 2008, the Federal Bureau of Investigation (FBI) has reviewed testimony of its examiners on the subject of compositional analyses of bullet lead (CABL). The goal of these reviews is to determine if there was a suggestion by the examiner that a bullet fragment or shot pellet could be linked to a single box of ammunition without clarification that there would be a large number of other bullets or boxes of bullets that could also match those fragments or shot pellets. Science does not support the statement or inference that bullets, shot pellets, or bullet fragments can be linked to a particular box of bullets. Further, any testimony stating bullets came from the same source of lead is potentially misleading without additional information regarding the approximate numbers of other "analytically indistinguishable" bullets that also originated from that same source. Finally, any testimony regarding the geographical distribution of analytically indistinguishable bullets exceeds the data currently available.

      While this review project was completed over four years ago, earlier this year our office was provided a transcript of testimony on CABL by Ms. Sandra Dixon, sister of Daniel Steve Dixon. Because of the age of the case, until receipt of this transcript the FBI was unaware of its existence and that it fell within the umbrella of the review.

      Based on the materials provided by Ms. Dixon, it appears that Dr. Vincent Guinn performed the analytical work in this case and provided the initial testimony of his results for the defendant's case. It should be noted that Dr. Guinn was not an FBI employee and, therefore, his testimony was not reviewed.

      The state called FBI Examiner John Kilty as a rebuttal witness. After reviewing the testimony of the FBI's examiner, it is the opinion of the FBI Laboratory that the examiner properly testified. Your office is encouraged to consult appellate specialists in your jurisdiction to determine whether you have any discovery obligations with respect to this finding.

20

Additionally, you should be aware that the FBI is cooperating with the Innocence Project. The Innocence Project is interested in determining whether improper CABL testimony was material to the conviction of any defendant, and, if so, to ensure appropriate remedial actions are taken. In order to fully assist them in their evaluation, the FBI will provide the Innocence Project information from our files, including a copy of the FBI expert's trial testimony in this case and our assessment of that testimony.

Further questions regarding our review of your case or the general issue of bullet lead examinations may be addressed to Marc LeBeau at: FBI Laboratory Division, 2501 Investigation Parkway, Quantico, VA 22135 (703-632-7408).

Sincerely,

Christopher "Todd" Doss
Director
FBI Laboratory

# TORI VERBER SALAZAR

DISTRICT ATTORNEY

*San Joaquin County*

**SCOTT A. FICHTNER**
Assistant District Attorney

**RONALD J. FREITAS**
Assistant District Attorney

**Office of the District Attorney**
MAIN OFFICE
222 E. Weber Ave., Room 202, Stockton, CA
P.O. Box 990, Stockton, CA 95201
Telephone: (209) 468-2400
Fax: (209) 465-0371

July 31, 2015

Mr. Daniel Steve Dixon
Inmate #C34223
Sierra Conservation Center
5150 O'Byrnes Ferry Road
Jamestown, CA 95327

Re: Superior Court Case Number 57383

Dear Mr. Dixon:

Recently, the San Joaquin County District Attorney's Office received a letter dated July 14, 2015, from the Federal Bureau of Investigations (F.B.I.) regarding expert testimony in your criminal trial.

In the letter, the F.B.I. states that composite lead bullet analysis was offered in your defense, and rebuttal testimony from an F.B.I. expert was offered by the Deputy District Attorney. Expert testimony in this field was called into question in other cases. The F.B.I. opines that their F.B.I. expert however correctly testified in your proceeding.

Enclosed please find a copy of the F.B.I. letter and the transcript of the F.B.I. expert testimony.

I am also sending a copy of this letter and transcript to your original trial attorney, Mr. Barry L. Morris, Esq., as I believe that you are without appellate counsel and are proceeding *pro per*.

If I may be of service to you in this or any other matter, of if there is any attorney you would like me to provide these material to, please advise.

Very truly yours,

Ronald J. Freitas
Assistant District Attorney

RJF:mf

Enclosures

Cc:     Barry L. Morris, Esq.
        1220 Oakland Blvd., Ste. 200
        Walnut Creek, CA  94596



C O P Y

August 6, 2015

Mr. Daniel Dixon, C-34223
Sierra Conservation Center, C-4-129-L
5150 O'Byrnes Ferry Road
Jamestown, CA  95327

RONALD J FREITAS
Assistant District Attorney
222 E  Weber Ave., Room 202
P O. Box 990
Stockton, CA. 95201

### RE: DISCREDITED AND ABANDONED COMPARATIVE BULLET ANALYSIS

Dear Mr  Freitas:

I am in receipt of your July 21, 2015 letter and the enclosed July 14, 2015 letter from Christopher Todd Doss, Director of the FBI Laboratory, including the attached transcript of expert witnesses testimony of FBI Agent John Kilty and Dr Vincent Guinn, both whom testified at my criminal trial, Case Number 57383, February 17th and 18th, 1991   As indicated in Mr. Doss's letter, my sister provided [through me] the transcribed testimonies

Sir, I appreciate you offering your service to me in  this or any other matter   In response to Mr  Doss's letter, I find it remarkable that he would provide the San Joaquin County District Attorney's Office with a letter supporting FBI Kilty's refuted testimony on Dr. Guinn's testimony admittedly without reading Dr. Guinn's testimony   I understand how supportive various agencies are of their colleague   However, in 2004 the FBI voluntarily cease offering analysis to law-enforcement even in light of the National Academy of Sciences continuing support of comparative bullet-lead analysis (CBLA) usage

Based on CBLA being discredited and abandoned by the the FBI, as noted on the record, several murder convictions were reversed, notably: (1) Phillip Scott Cannon in Salem, Oregon who won release after 10 years incarceration for triple homicides; (2) three people convicted of murder and released from prison in Denver, Colorado based on FBI abandonment of CBLA and equally notable; (3) a Florida man was released after serving 10-years for a double homicide; again, resulting from the discredited and abandoned comparative bullet-lead analysis. Please refer to the enclosures

On several occasions I have written to various attorneys, innocence projects and FBI Agents, beginning in November, 2007   Now that I have placed this matter before the Third District Court of Appeals, seemingly there is now good cause to hear from the FBI and District Attorneys Office, respectively.

Since Mr. Christopher Todd Doss has essentially refused to address the FBI abandoning this highly controversial subject of CBLA, I surmise that his letter is not fully forthright, as this issue legally merits.

Mr  Freitas, I ask that you not forward to Mr  Parry L  Morris, my trial attorney, any further material regarding my case since there remains some conflict between he and myself. Also, if there is any other related material on

Page 2  Continued:
**RE: DISCREDITED AND ABANDONED COMPARATIVE BULLET ANALYSIS**

the subject of CBLA that your office has or has access to, I would appreciate receiving it from you.  Thank you.

Respectfully submitted:

*Daniel Dixon*

Daniel Dixon, In Pro Per

cc. Marc LeBeau, FBI

## VERIFICATION

### (C.C.P. §§ 446; 2015.5; 28 U.S.C. § 1746)

I,  DANIEL STEVE DIXON , declare under penalty of perjury that:

I am the Plaintiff in the above-named matter.  I have read the above below named document and know the contents thereof, information and belief therein that they are true.

### CIVIL COMPLAINT
### [FOIA]

EXECUTED this  3rd  day of   May        ,  2016 , at Sierra Conservation Center, County of Tuolumne, Jamestown, California 95327.

[Signature]: _Daniel Dixon_

D E C L A R A N T

* * * * * * * *

## PROOF OF SERVICE BY MAIL

### (C.C.P. §§ 1013(a); 2015.5; 28 U.S.C. § 1746)

I, DANIEL STEVE DIXON, hereby declare:

I served a copy of the following document on each of the person(s) and/or party(ies) as listed below by placing a true copy in the United States Mail at: Jamestown, California, on ___May_____, 3rd , 2016 .

### CIVIL COMPLAINT
### [FOIA]

Person(s) and/or party(ies) served/or mailed to:

JAMES B. COMEY, Director
Federal Bureau of Investigation
935 Pennsylvania Avenue, N.W.
Washington, D.C. 20535

LORETTA LYNCH, U.S. Attorney General
United States Justice Department
950 Pennsylvania Avnue, N.W.
Washington, D.C. 20535

PRISCILLA JONES
Supervisory Administrative Specialist
U S. Department of Justice
Office of Information Policy
Washington, D.C. 20530

I swear under penalty of perjury that the foregoing is true and correct. EXECUTED at Jamestown, California 95327, on this  3rd  day of   May    ,  2016

**Resubmitted for mailing to U.S. District of Columbia Court Clerk on 5/10/16.** D. Dixon

[Signature]: _Daniel Dixon_

D E C L A R A N T