UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
DANIEL DIXON,                       )
                                    )
              Plaintiff,            )
                                    )
    v.                              )   Civil Action No. 16-1010 (TSC)
                                    )
U.S. DEPARTMENT OF JUSTICE,         )
                                    )
              Defendant.            )
_____ )

**MEMORANDUM OPINION**

This matter is before the court on Defendant U.S. Department of Justice's Motion for Summary Judgment, ECF No. 17. For the reasons discussed below, the court will GRANT the motion.

I. BACKGROUND

Plaintiff Daniel Steve Dixon is a California state prisoner. (Compl. ¶ 1). It appears that his criminal conviction was based in part on expert testimony regarding compositional bullet lead analysis ("CBLA") introduced at Plaintiff's trial on February 18, 1981. (*See id*. ¶¶ 1, 7; Mem. of P. & A. in Support of Def. U.S. Dep't of Justice's Mot. for Summ. J., Decl. of David M. Hardy ("Hardy Decl."), Ex. A at 1). The Federal Bureau of Investigation ("FBI") "no longer conduct[s] the examination of bullet lead" since concerns arose "relating to the interpretation of the results of bullet lead examinations." (Compl., Ex. A5, Attach. 2). Notwithstanding reports that CBLA is a "discredited and abandoned forensic technique," (*id*. ¶ 7), "it is the opinion of the

1

FBI Laboratory that [FBI Examiner John Kilty] properly testified" at Plaintiff's trial as a rebuttal witness. (*Id.*, Ex. C at 1).

On December 29, 2015, Plaintiff submitted a request to the FBI under the Freedom of Information Act ("FOIA"), *see* 5 U.S.C. § 552, for "information and/or copies of the discredited and abandoned comparative (sometimes called compositional) bullet lead analysis (CBLA) which the [FBI] previously used prior to determining its unreliability in 2004." (Hardy Decl., Ex. A at 1). Specifically, Plaintiff sought:

> 1. Comparative Bullet-Lead Analysis (CBLA) report, also known as Compositional Bullet-Lead Analysis by Rochelle F.H. Bohaty, March 2, 2009[;]
>
> 2. The FBI September 1, 2005 memorandum and/or letter regarding Discontinuation of Bullet Lead Examinations[;]
>
> 3. Information, e.g., letter or memorandums, from the prosecution's office (prisoners['] or ex-prisoners['] names redacted) who "used the bullet evidence at trial" to gain conviction, specifically of those charged with cases where CBLA was used, and later lead to reversal[;]
>
> 4. FBI letter to the state, city and county agencies, including district attorney offices[,] declaring the FBI abandonment of CBLA use in approximately 2,000 criminal cases, and;
>
> 5. Any further information relevant to my case, including information from the San Joaquin County District Attorney Office related to CBLA matters.

(*Id.*, Ex. A at 1). Among the attachments to Plaintiff's FOIA request was a copy of the FBI's September 1, 2005 press release titled "FBI Laboratory Announces Discontinuation of Bullet Lead Examinations." (Compl., Ex. A5, Attach. 2).

2

The FBI divided Plaintiff's FOIA request into three parts and assigned each a tracking number. (*See* Hardy Decl. ¶¶ 7-10). Request Number 52976 corresponded with the third item in Plaintiff's request. (*Id*. ¶ 8). The FBI determined that Plaintiff's request for "information from the prosecution's office who used bullet evidence which later lead to a conviction reversal . . . did not contain enough descriptive information to permit a search of FBI records." (*Id*.). It provided Plaintiff "[e]xamples of specific information which could assist" FBI staff in conducting a search, such as "names of specific individuals, [or the] date, time and locations of events, or a specific time frame and/or location." (*Id*.). Further, it provided Plaintiff instructions for filing an administrative appeal of this determination. (*See id*., Ex. B at 1). Nothing in the record suggests that Plaintiff either perfected his request or pursued an administrative appeal.

FOIPA Request Number 1343144-000 corresponded with the second and fourth items of Plaintiff's FOIA request for "Reports, Memorandum, etc[.] for CBLA letters of abandonment[.]" (*Id*. ¶ 9). FOIPA Request Number 1343107-001 corresponded to the fifth item of Plaintiff's FOIA request for information about himself. (*Id*. ¶ 16). An initial search of the Central Records System yielded five pages of records which the FBI released in full or in part on August 22, 2016. (*Id*. ¶ 17). With this release the FBI responded to the other items of his FOIA request:

> In response to item 1 of your December 29, 2015 FOIA request, the requested document . . . is not a document prepared by the FBI nor has the FBI incorporated the report into its files . . . . In response to item 2 of your request, there are no additional records responsive to this item aside from the memo . . . you attach[ed] to your request. In regard to item 3, this item is too vague in order to permit the FBI to conduct a reasonable search for responsive records. In response to item 4, enclosed is a processed copy of the standard FBI form letter regarding the discontinuation of Bullet Lead Examinations that was sent to prosecutor's offices. In regard to item 5 of your request, a search of the Sacramento Field Office was conducted and potentially responsive pages will be processed . . . .

(*Id*., Ex. J at 2). On September 23, 2016, the FBI released 19 additional pages of records in full or in part. (*Id*. ¶ 18). Where the FBI withheld information, it relied on FOIA Exemptions 6 and 7(C). (*Id*. ¶¶ 17-18).

## II. DISCUSSION

### *A. Summary Judgment in a FOIA Case*

"FOIA cases typically and appropriately are decided on motions for summary judgment." *ViroPharma Inc. v. Dep't of Health & Human Servs.*, 839 F. Supp. 2d 184, 189 (D.D.C. 2012) (citations omitted). The court grants summary judgment if the movant shows that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). Summary judgment in a FOIA case may be based solely on information provided in an agency's supporting affidavits or declarations, if they are relatively detailed and when they describe "the documents and the justifications for nondisclosure with reasonably specific detail . . . and are not controverted by either contrary evidence in the record [or] by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).

### *B. Request Number 52976*

"[E]ach agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). "Omitting one of the two threshold requirements for a proper FOIA request . . . warrants dismissal." *Lowe v. DEA*, No. 06-CV-1133, 2007 WL 2104309, at *5 (D.D.C. July 22, 2007) (citations omitted). Records are reasonably described "if a professional employee of the

4

agency familiar with the subject matter can locate the records with a reasonable amount of effort." *Armstrong v. Bush*, 139 F.R.D. 547, 553 (D.D.C. 1991) (citations and internal quotation marks omitted).

Although Plaintiff does not mention Request Number 52976 in his Complaint, in his opposition to Defendant's motion, he objects to the "disingenuous and less than half hearted response" he received when "[D]efendant stated that [he] was not specific enough in his request." (Pl.'s Opp'n at 7).[1] The court, however, concurs with the FBI's assessment that the third item of Plaintiff's FOIA request does not reasonably describe the records requested. Furthermore, a substantive response to Request Number 52976 would require that FBI staff locate letters or memoranda from prosecutors' offices throughout the country, identify each criminal matter for which the FBI conducted comparative bullet lead analysis, and determine the cases resulting in a conviction which subsequently was reversed after CBLA had been discontinued. Where, as here, an agency's response to a FOIA request calls for "an unreasonably burdensome search," *Am. Fed'n of Gov't Employees, Local 2782 v. U.S. Dep't of Commerce*, 632 F. Supp. 1272, 1278 (D.D.C. 1986) (citing *Goland v. CIA*, 607 F.2d 339, 353 (D.C. Cir. 1978)), the agency need not honor the request.

*C. FOIPA Request Numbers 1343107-001 and 1343144-000*

"The Court applies a reasonableness test to determine the adequacy of search methodology . . . consistent with the congressional intent tilting in favor of disclosure."

---

[1] Plaintiff's response to Defendant's summary judgment motion, ECF No. 22, includes an introduction, Plaintiff's declaration, and his memorandum of points and authorities, on sequentially numbered pages, along with exhibits designated by letters A through S. The court refers to this submission ("Pl.'s Opp'n") using the page numbers designated by Plaintiff.

*Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 27 (D.C. Cir. 1998) (citations and internal quotation marks omitted). An agency "fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011) (citations and internal quotation marks omitted). The agency may submit a declaration to explain the method and scope of its search, *see Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982), and its declaration is "accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks and citation omitted). However, if the record "leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990).

1. The Central Records System

The Central Records System ("CRS") includes "applicant, investigative, personnel, administrative, and general files compiled and maintained by the FBI in the course of fulfilling its integrated missions and functions as a law enforcement, counterterrorism, and intelligence agency[.]" (Hardy Decl. ¶ 19). The CRS is made up of a "numerical sequence of files, called FBI 'classifications.'" (*Id.* ¶ 20). CRS "file classification categories include types of criminal conduct and investigations conducted by the FBI," and "categorical subjects pertaining to counterterrorism, intelligence, counterintelligence, personnel, and administrative matters." (*Id.*). When a case file is opened, it is assigned a three-part Universal Case File Number consisting of a

6

CRS file classification number, an abbreviation for the office of origin, and an individual case file number for that particular subject matter. (*Id*. ¶ 20).

The FBI's declarant, David M. Hardy, explains that "general indices are the index or 'key' to locating records within the . . . CRS." (*Id*. ¶ 21). Indices are arranged alphabetically "and comprise an index on a variety of subject matters to include individuals, organizations, events, or other subjects of investigative interest that are indexed for future retrieval." (*Id*.). There are two categories of general indices. A main entry "carries the name of an individual, organization, or other subject matter that is the designated subject of the file." (*Id*. ¶ 21a). A reference entry, or cross-reference, "merely mention[s] or reference[s] an individual, organization, or other subject matter that is contained in [the] 'main' file record about a different subject matter." (*Id*. ¶ 21b). "The Universal Index ('UNI') is the automated index of the CRS[.]" (*Id*. ¶ 24). It provides "a centralized, electronic means of indexing pertinent investigative information to FBI files for future retrieval via index searching." (*Id*.). For example, an individual's name can be recorded with identifying information, such as his date of birth, race, sex, and Social Security number. (*Id*.).

Since 1995, FBI Headquarters, Field Offices and Legal Attaches use the Automated Case Support ("ACS") system, described as "an electronic, integrated case management system . . . design[ed] to enable the FBI to locate, retrieve, and maintain information in its files in the performance of its myriad missions and functions." (*Id*. ¶ 23). ACS is "built upon and incorporate[s] prior automated FBI indices[, and] a search employing the UNI application of ACS encompasses data that was already indexed into the prior . . . systems[.]" (*Id*. ¶ 24). Thus,

"a UNI search in ACS is capable of locating FBI records created before its . . . implementation [in 1995] in both paper and electronic format." (*Id*.).[2]

2. The FBI's Search for Responsive Records

FBI staff determined that an index search of CRS was appropriate given the "comprehensive nature and scope" of the CRS, and because the CRS is the location "where the FBI indexes information about individuals, organizations, events, and other subjects of investigative interest for future retrieval." (*Id*. ¶ 29). Accordingly, they "conducted a CRS index search for responsive main and cross-reference records employing the UNI application of ACS and the manual index" using variations of Plaintiff's name as search terms. (*Id*. ¶ 27). To "facilitiate the identification of responsive records," staff "used information in [P]laintiff's request letter, such as his date of birth." (*Id*.). The search yielded "two Sacramento serials[.]" (*Id*.).

Because "potentially responsive records would have logically been located at the FBI lab in Quantico, VA," (*id*. ¶ 29), staff at the lab searched "its records to locate any responsive material requested in [P]laintiff's multi-part request," (*id*. ¶ 28). This search yielded three memoranda, including a copy of the September 1, 2005 memo, (*id*.), which is essentially the same press release Plaintiff attached to his FOIA request, (*see* Pl.'s Opp'n at 4, 6).

---

[2] In July 2012, the FBI adopted a case management system called Sentinel. (Hardy Decl. ¶ 25). Because Plaintiff's jury trial occurred in 1981, the records Plaintiff sought "would only have existed before the . . . implementation of Sentinel," and, therefore, "any responsive information would be located via an index search of ACS and the manual indices." (*Id*. ¶ 27).
8

The FBI released a total of 24 pages of records, copies of which "have been consecutively numbered '16-cv-1010-1 through 16-cv-1010-24' at the bottom of each page." (Hardy Decl. ¶ 33; *see generally id*., Ex. L).

### 3. Plaintiff's Challenges to the FBI's Search

Plaintiff contends that the FBI "failed to provide . . . letters and reports that lead to overturning murder convictions that resulted from [CBLA and] unredacted requested CBLA information." (Pl.'s Opp'n at 1). Some of the documents released by the FBI in redacted form are copies of the same documents Plaintiff already had obtained in unredacted form. (*Id*. at 6, 8). Plaintiff likens his case to that of Gary L. Kretchmar, whose FOIA request to the FBI "seeking release of his bullet-lead case file," among other items, led to the release "of 110 responsive pages, consisting of a copy of the FBI Laboratory's July 17, 2009 letter as well as the three reviewers' work papers which includes copies of the transcript from plaintiff's state criminal trial used to review the FBI witness' CBLA testimony at plaintiff's criminal trial." *Kretchmar v. FBI*, 882 F. Supp. 2d 52, 55 (D.D.C. 2012) (internal quotation marks and citation omitted). Further, Plaintiff notes that one of the documents released by the FBI, (*see* Hardy Decl., Ex. L at 1), "clearly stated that it had enclosed . . . the 'FBI Laboratory report that describes the status of the examinations at the time this decision [to discredit and abandon CBLA] was announced," (Pl.'s Opp'n at 8 (brackets in original)), yet the FBI failed to release this report. It appears that Plaintiff expected the FBI to locate and release information not only pertaining to his criminal case, but also proving that the now-discredited CBLA performed in his case undermines his criminal conviction. The court presumes that Plaintiff is challenging the adequacy of the FBI's search because it did not yield the precise records he requested.

9

An agency's search is judged on the basis of its methods and scope, not the results. *See Boyd v. Criminal Div. of U.S. Dep't of Justice*, 475 F.3d 381, 391 (D.C. Cir. 2007). "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983) (citing *Perry*, 684 F.2d at 128). The Hardy Declaration explains the agency's recordkeeping systems and the method and scope of its search for records responsive to Plaintiff's FOIA request for information about himself in relation to CBLA. The declaration enjoys a presumption of good faith. Plaintiff offers no evidence to overcome the presumption by, for example, showing that the FBI "failed to search particular offices or files where the document might well have been found" or "ignored indications in documents found in its initial search that there were additional responsive documents elsewhere." *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) (citations omitted). The court concludes that the FBI conducted a search reasonably calculated to uncover responsive records.

## D. Exemption 7(C)[3]

Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes," but only to the extent that disclosure would cause an enumerated harm, *see FBI v. Abramson*, 456 U.S. 615, 622 (1982), including where disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(7)(C). "To show that the disputed documents were compiled for law enforcement purposes, the

---

[3] Because the court concludes that all of the responsive records were compiled for a law enforcement purpose, it addresses the FBI's decision to withhold information under Exemption 7(C) only. *See Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1173 (D.C. Cir. 2011).

[agency] need only establish a rational nexus between the investigation and one of the agency's law enforcement duties and a connection between an individual or incident and a possible security risk or violation of federal law." *Blackwell v. FBI*, 646 F.3d 37, 40 (D.C. Cir. 2011) (internal quotation marks and citations omitted).

The Hardy Declaration explains that "[t]he FBI compiled the records pertaining to CBLA pursuant to its assistance to law enforcement," namely its assistance "to local law enforcement in its investigation of violent crimes[.]" (Hardy Decl. ¶ 38). Thus, the FBI makes its threshold showing that the records responsive to Plaintiff's FOIA request were compiled for law enforcement purposes within the scope of Exemption 7.

Exemption 7(C) protects from disclosure information in law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). In determining whether this exemption applies to particular information, the court must balance the privacy interest of individuals mentioned in the records against the public interest in disclosure. *See Am. Civil Liberties Union v. Dep't of Justice*, 655 F.3d 1, 6 (D.C. Cir. 2011). The privacy interest at stake belongs to the individual, not the government agency, *see Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763-65 (1989), and "individuals have a strong interest in not being associated unwarrantedly with alleged criminal activity," *Stern v. FBI*, 737 F.2d 84, 91-92 (D.C. Cir. 1984). When balancing an individual's privacy interest against the public interest in disclosure, "the only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.'" *Davis v. Dep't of Justice*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (quoting *Reporters Comm.*, 489 U.S. at 773).

"Each instance of information withheld on the [released] documents is accompanied by a coded designation that corresponds to [one of five] categories[.]" (Hardy Decl. ¶ 35). Under Exemption 7(C), the FBI withholds the names of and identifying information about "FBI Special Agents and support personnel who were responsible for conducting, supervising, and/or maintaining the investigative activities reflected in the documents," (*id*. ¶ 43), "the names and [of] and identifying information [about] third parties who were merely mentioned in the documents," (*id*. ¶ 45), the name of a third party of investigative interest to the FBI, (*id*. ¶ 46), the name of a local law enforcement employee, (*id*. ¶ 47), and "the name of a third party . . . who has a criminal record with the FBI and/or other law enforcement agencies," (*id*. ¶ 48).

Plaintiff's opposition does not address the claimed exemptions. He does not argue that the third parties have no privacy interests. Nor does he assert a public interest of such magnitude as to outweigh the third parties' privacy interests. Based on the court's review of the Hardy Declaration and copies of the redacted documents themselves, Defendant properly has withheld third party information under Exemption 7(C). *See, e.g., SafeCard Servs.*, 926 F.2d at 1206 (holding "categorically that, unless access to the names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure"); *Kretchmar*, 882 F. Supp. 2d at 56-57.

### *E. Segregability*

If a record contains some information that is exempt from disclosure, any reasonably segregable information not exempt from disclosure must be released after deleting the exempt portions, unless the non-exempt portions are inextricably intertwined with exempt portions. 5

U.S.C. § 552(b); *see Trans-Pacific Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1027 (D.C. Cir. 1999). The court has reviewed the Hardy Declaration and copies of the redacted documents, and finds that the FBI has released all reasonably segregable information.

III. CONCLUSION

The FBI has demonstrated that its search for records responsive to Plaintiff's FOIA request was reasonable, and that its decision to withhold information under Exemption 7(C) was proper. Accordingly, the court will grant Defendant's motion for summary judgment. An Order is issued separately.

DATE: August 22, 2017                /s/
                                     TANYA S. CHUTKAN
                                     United States District Judge